RECEIVED

JAN - 8 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

KAREN LEWIS

CIVIL ACTION NO.: 15-0035

VERSUS

JUDGE DOHERTY

REPUBLIC FIRE & CASUALTY INS.
CO., ET AL.

MAGISTRATE JUDGE WHITEHURST

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. 36] filed by Republic Fire and

Casualty Company ("Republic"), wherein Republic seeks dismissal of plaintiff's claims against it

for the reasons more particularly described in this Ruling.  Plaintiff Karen Lewis opposes the motion

[Doc. 41], and Republic has filed a Motion for Leave to File a Reply Brief [Doc. 43], which is herein

GRANTED.  Republic also filed a Motion to Strike [Doc. 42] certain portions of the plaintiff's

opposition brief, which is DENIED AS MOOT for reasons that will become apparent in this ruling.

For the following reasons, the Motion for Summary Judgment is DENIED.

I.      **Factual and Procedural History**

The instant lawsuit arises out of an October 19, 2013 fire at the residence owned by the

plaintiff, Karen Lewis, located at 3 Larkspur Lane, Lafayette, Louisiana and the plaintiff's

subsequent insurance claim.  The undisputed facts are as follows:

- On October 19, 2013, a fire occurred at the residence owned by plaintiff, Karen Lewis, located at 3 Larkspur Lane, Lafayette, Louisiana 70507.

- Republic issued Homeowner's Policy No. HI1 0861332 05 to the named insured, Karen Lewis, for the residence premises located at 3 Larkspur Lane for the period of March 12, 2013 to March 12, 2014 (the "Policy").

- After the fire, plaintiff made a claim to Republic under the Policy.

- On or about October 21, 2013, Republic retained independent adjuster Randy Cook of Littleton Claims Service, LLC to adjust plaintiff's claim.

- Following inspection, Mr. Cook issued a report and estimate dated November 12, 2013. Mr. Cook estimated the actual cash value of plaintiff's dwelling damages to be $47,061.95.

- On or about November 14, 2013, Republic tendered payment of $47,061.95 to plaintiff. The same day Republic also issued a check in the amount of $3,490.76 made payable to Karen Lewis and ServiceMaster for cleaning of the dwelling by ServiceMaster.

- Following the initial adjustment of the loss, on or about December 3, 2013, Republic received a letter from plaintiff invoking the policy's appraisal provision.

- The appraisal provision contained in Section I – Conditions of the Policy states:

## SECTION I – CONDITIONS
* * *

**6. Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

- Plaintiff named William Martinez as her appraiser. Republic selected Keith Brown as its appraiser. Neither party objected to the other party's choice of appraiser. No umpire was selected by the parties.

- On December 30, 2014, Keith Brown inspected the dwelling with plaintiff's contractor, Anthony Odeh.

- At the inspection by Mr. Brown, plaintiff's contractor provided Mr. Brown with his estimate of the work to be done. After the inspection, Mr. Brown separately prepared his own estimate setting the amount of loss. After separately setting the amount of loss, Mr. Brown provided his estimate to plaintiff's appraiser and plaintiff's contractor for input and discussion.

- Thereafter, both appraisers signed a document entitled "Appraisal Award" dated February 10, 2014, which set the Replacement Cost Value of Ms. Lewis' loss as $74,923.10.

- The Appraisal Award was provided to Republic on or about February 13, 2014.

- On February 14, 2014, Republic sent correspondence to Karen Lewis enclosing a copy of the Appraisal Award and providing pertinent information regarding the Replacement Cost Coverage included in the Policy.

- On February 14, 2014, Republic issued a payment of $19,698.40.

- The Loss Settlement Provision contained in the Policy provides:

## SECTION I – CONDITIONS

* * *

**3. Loss Settlement.** Covered property losses are settled as follows:
* * *
**b.** Buildings under Coverage A and B at replacement cost without deduction for depreciation, subject to the following:
**(1)** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, **but not more than the least of the following amounts**:
**(a)** The limit of liability under this policy that applies to the building;
**(b)** The replacement cost of that part of the building damaged with material of like kind and quality; or
**(c)** The necessary amount actually spent to repair or replace the damaged building.

* * *

**(4)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of **b.(1)** and **b.(2)** above.

- Republic's February 14, 2014 tender represented the balance of the actual cash value of damage to the dwelling as established by the Appraisal Award after subtracting prior payments by Republic (Republic did not apply the $1,000 deductible to the

-3-

Appraisal Award because the deductible was applied to plaintiff's business personal property claim).

- Sometime around April 15, 2014, the plaintiff's contractor, who was at that time repairing the plaintiff's home, uncovered what the plaintiff identifies as "hidden damage and missing items," which the plaintiff avers were not known to the appraisers at the time the Appraisal Award was submitted and which total $39,006.49. This supplemental estimate was sent by the plaintiff's contractor to the plaintiff's appraiser, who signed the supplemental award and then forwarded it to Mr. Brown.

- On April 23, 2014, plaintiff's contractor sent correspondence to Republic requesting the release of recoverable depreciation.

- Because the Policy provides for payment at replacement cost without deduction for depreciation when certain conditions are met, on or about May 8, 2014, Republic issued payment of $8,162.75 based on the Appraisal Award.

- Following issuance of this payment, Republic had tendered a total amount of $78,413.86 for damages to the dwelling. This amount was $3,490.76 (the amount paid for cleaning) in excess of the Replacement Cost Value set by the Appraisal Award.

The plaintiff contends Mr. Brown refused to consider the amounts contained in her contractor's supplemental estimate and that she, therefore, has not been paid the full amount she is owed under the policy. Plaintiff filed suit against Republic, Keith Brown, and Crawford and Co. in the Fifteenth Judicial District Court for the Parish of Lafayette on November 10, 2014. The lawsuit was removed to this Court, and all claims against Keith Brown and Crawford have been dismissed [Docs. 21 & 22], and the only claims remaining in the matter before this Court are the plaintiff's claims against Republic for failure to pay all damages due under the Policy; breach of contract; negligence; and bad faith arbitrary and capricious failure to pay the plaintiff's claim.

Republic filed the instant motion for summary judgment, seeking dismissal of all of the plaintiff's claims on grounds the appraisal process was properly followed and plaintiff's dwelling damages are therefore limited to the Appraisal Award, and further asking this Court to affirm the

4

appropriateness of the Appraisal Award.  Republic, also, seeks dismissal of the plaintiff's breach of

contract and bad faith claims.  Thus, in the motion before the Court, coverage is not disputed and

this Court will, therefore, for the purposes of this motion only, assume there is coverage for the

plaintiff's claims.   Consequently, the only dispute before the Court, at this time, is the

appropriateness of the "Appraisal Award."

## II.    Summary Judgment Standard

Summary judgment is appropriate where the facts and law as represented in the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show there is no genuine issue as to any material fact and the moving party is entitled to a judgment

as a matter of law.  Fed. R. Civ. Proc. 56(c).  A fact is material if it could affect the outcome of the

case under the governing law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute

about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *Id.* at 248.

The party seeking summary judgment bears the initial burden of demonstrating that there is

an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 47 U.S.

317, 325 (1986).  Only after a proper motion for summary judgment is made must the non-movant

set forth specific facts showing there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).

As the Fifth Circuit has pointed out:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,'
> by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla'
> of evidence.  We resolve factual controversies in favor of the nonmoving party, but
> only when there is an actual controversy, that is, when both parties have submitted
> evidence of contradictory facts. *We do not, however, in the absence of any proof,*
> *assume that the nonmoving party could or would prove the necessary facts.*
> ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak
> or tenuous on an essential fact that it could not support a judgment in favor of the

nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5ᵗʰ Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5ᵗʰ Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." *Id.* In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the non-moving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5ᵗʰ Cir. 2001).

III.    **Law and Analysis**[1]

To reiterate, for purposes of this motion, only, coverage is not disputed and this Court will

---

[1] Republic – without argument or discussion – sets forth Louisiana law as the applicable law governing interpretation of the subject policy. The application of Louisiana law is not disputed by any party to the litigation. Therefore, for the purposes of this motion only, this Court will assume the policy is to be interpreted under Louisiana law.

An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship. Louisiana Civil Code Article 1983. An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. *Ledbetter v. Concord General Corp.*, 665 So.2d 1166, 1169 (La.1996), *citing Smith v. Matthews*, 611 So.2d 1377, 1379 (La.1993). The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. *Ledbetter*, 665 So. 2d at 1169. See also La.Civ.Code art. 2047; *Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co.*, 630 So.2d 759, 763 (La. 1994). If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. *Pareti v. Sentry Indemnity Co.*, 536 So.2d 417, 420 (La.1988).

assume – for the purposes of this motion – there is coverage for the plaintiff's claims.  The only dispute before the Court at this time is the appropriateness of the Appraisal Award.

The insurance contract between Ms. Lewis and Republic contains the following provision:

## SECTION I – CONDITIONS

\* \* \*

> **6. Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

It is well-settled that appraisal clauses such as the clause contained in the subject policy are enforceable under Louisiana law.  *St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F.Supp.2d 748, 753 (E.D.La. 2010), *citing Newman v. Lexington Ins. Co.*, 2007 WL 1063578, at *2 (E.D.La. Apr. 4, 2007); *Fourchon Docks, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 1988 WL 32938, at *8 (E.D.La. Apr. 6, 1988); *Sevier v. U.S.F. & G.*, 485 So.2d 132, 135–36 (La. App. 2nd Cir. 1986), *rev'd on other grounds*, 497 So.2d 1380 (La.1986); *Girard v. Atlantic Mut. Ins. Co.*, 198 So.2d 444, 445–47 (La. App. 4th Cir. 1967).  Such clauses do not, however, deprive a court of jurisdiction over the matter.  *Newman*, 2007 WL 1063578, at *2; *Fourchon Docks*, 1988 WL 32938, at *8; *Girard*, 198 So.2d at 446.

Appraisal provisions in insurance contracts are strictly construed. *St. Charles Parish Hosp.*, 681 F.Supp.2d at 754 , *citing Branch v. Springfield Fire & Marine Ins. Co.*, 4 So.2d 806, 809 (1941).

Contractually specified appraisal awards are presumed accurate. *See In re Waters*, 93 F.2d 196, 200 (5th Cir.1937) (surveying cases from numerous jurisdictions to determine that "every reasonable intendment and presumption is in favor of an award of appraisers selected to determine the value of property lost").

However, the actual appraisal provision of the policy at issue *does not give this Court authority to set the amount of the loss*. The only authority granted to this Court by way of paragraph 6 in "Section 1 – Conditions" of the policy is the authority *to select an umpire should the parties be unable to select one*. Thus, this Court is without authority to grant that portion of the relief requested.

With respect to the issue of whether an appraisal award is "binding," this Court notes the majority of Louisiana cases that hold an apprisal award is binding reference cases wherein the policy contains language to the effect that "a decision agreed to by any two (umpire or appraisers) will be binding."[2] Importantly, *no such language appears in the subject policy*. Rather, the subject policy merely states that "[a] decision agreed to by any two will set the amount of loss." Thus, there is no language in the policy between the plaintiff and Republic addressing the "binding" nature of the appraisal award. Furthermore, courts that *do* address the binding nature of an appraisal state that "[a]n appraisal award issued under an insurance policy is binding only if the appraisers "have performed the duties required of them by the policy, which is the law between the contracting parties." *See, e.g., Island Concepts LLC v. Certain Underwriters at Lloyd's, London*, 2014 WL

---

[2] Although the 1941 Louisiana Supreme Court case of *Branch v. Springfield Fire & Marine Ins. Co.*, 4 So.2d 806 (La. 1941) states "in order for the award of the appraisers to be binding, it must clearly appear that they have performed the duties required of them by the policy, which is the law between the contracting parties," the language of the policy is not included in the opinion, therefore it is unclear to the Court whether the contact between the parties in that case addressed the circumstances under which the appraisal award became binding. Later decisions by federal district courts have stressed the binding nature of the appraisal award specifically because of the language contained in the policies addressing the binding nature of such awards.

5524379 (E.D. La. 2014) (J. Vance).  *See also St. Charles Parish Hosp.*, 681 F.Supp. at 754; *Prien Props., LLC v. Allstate Ins. Co.*, No. 07–845, 2008 WL 1733591, at *2 (W.D.La. Apr. 14, 2008); *Fourchon Docks*, 1988 WL 32938, at *8.  Because of the presence of the "binding" language in these policies, these courts hold that the burden of demonstrating that the award should not be confirmed falls upon the party challenging it.  *See, e.g., St. Charles Parish Hosp.*, 681 F.Supp. at 754;

In the instant case, Republic asks this Court to "affirm the appropriateness of the Appraisal Award," as well as Republic's timely payment of that award; and seeks dismissal of the plaintiff's breach of contract and bad faith claims on grounds such claims are subject to summary dismissal where timely payment of a valid appraisal award has been made.  The plaintiff counters that the supplemental estimate prepared by her contractor on or around April 15, 2014 should have been considered by the appraisers in setting the amount of the loss; that Republic's action in directing its appraiser not to consider the amounts contained in the supplemental estimate amounts to bad faith; and that the appraisal award process has not been completed because no umpire was ever chosen by the parties as required under the policy.  Thus, in order to grant the relief requested by Republic – that is, to conclude a proper Appraisal Award has been executed and paid – this Court would necessarily have to conclude the appraisal award amount and that the process has been completed; the Appraisal Award is binding; and the plaintiff's dwelling damages under the policy are limited to the amount contained in the Appraisal Award.

This Court cannot grant the relief requested by Republic, because it concludes it lacks the authority to do so, as well as concluding the appraisal process has not been completed, thus, prohibiting the relief requested.  The policy specifically states the following:

## SECTION I – CONDITIONS

\* \* \*

> **6. Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. **The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.** The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. **If they fail to agree, they submit their differences to the umpire.** A decision agreed to by any two will set the amount of loss.

(emphasis added).

As shown above, the specific language of the subject policy mandates that the two appraisers "will" select an umpire, whose role is to help determine the amount of the loss in the event the appraisers chosen by the parties cannot agree on the amount of loss. Here, the appraisers do not agree on the amount of the loss, however, **the provisions of the policy have not been complied with**, as **no umpire has been selected by the parties to resolve the disputed amount in the event of an impasse.** *See, e.g., Woodward v. Liberty Mutual Ins. Co.*, 2010 WL 1186323 (N. D. Tex. Dec. 26, 2013) (although applying Texas law, court concluded appraisal process was not completed in substantial compliance with the requirements imposed by the appraisal clause of the policy where the appraisal clause required that the two appraisers choose and umpire, and no umpire was ever chosen).

Second, and also, significant, the policy does not permit the courts to determine the amount of the loss. Rather, the amount of the loss is a *factual* determination to be determined by the appraisal award process defined and set forth in the policy; the said process the parties have not complied with or completed.

10

This Court is mindful of Louisiana's policy of strict construction of appraisal clauses. Bearing this in mind, the Court is given pause by the argument of Republic, which argues that the Appraisal Award is valid and enforceable when, in fact, Republic has not complied with the express terms of its own policy's appraisal clause. This Court has grave concern as to whether Republic can fail to comply with its own procedure, set forth in its own policy, and then claim protection under the law for that failure to comply with its own policy process. However, this is not a question before the Court at this time, but, is likely, rather more appropriately discussed when the Court considers the bad faith claim asserted by the plaintiff.

Thus, for the foregoing reasons, this Court concludes the instant motion for summary judgment is DENIED as this Court concludes the defendant is not entitled to the relief requested, for the reasons stated herein, and therefore, the Motion for Summary Judgment is DENIED.

## IV.   Motion to Strike [Doc. 42]

In its Motion to Strike, Republic asks this Court to strike certain evidence submitted by the plaintiff in connection with its opposition to the pending motion for summary judgment on grounds the evidence is inadmissible, including exhibits Republic claims are not properly authenticated and the purported affidavit of the plaintiff's contractor on grounds the affidavit was not signed before a notary. Considering this Court's ruling denying the motion for summary judgment, the Motion to Strike is DENIED AS MOOT.

## V.   Conclusion

For the foregoing reasons,

IT IS ORDERED that the Motion for Summary Judgment [Doc. 36] filed by Republic is DENIED for the reasons stated herein.

IT IS FURTHER ORDERED that the Motion to Strike [Doc. 42] is DENIED AS MOOT.

11

IT IS FURTHER ORDERED that ten days after the date of this Ruling, the parties shall jointly contact the Court for the purpose of scheduling a telephone status conference to discuss this matter, particularly in light of the recently-denied motion to continue deadlines [Doc. 49].  The parties shall be prepared to discuss this Court's grave concerns as to the position taken by Republic in this matter, *i.e.*, that the Appraisal Award is invalid despite Republic's failure to comply with a key requirement of the appraisal provision, that is, the selection of an umpire.  This Court will discuss the foregoing in the context of what additional discovery needs to be completed in this case, and in connection with the plaintiff's bad faith claims.

Lafayette, Louisiana, this _____8_____ day of January, 2016.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE